UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMADA FRANCHISE SYSTEMS, INC., a Delaware Corporation, | **CLOSED** |
| Plaintiff, | |
| v. | |
| | CIVIL ACTION NO. 04-2446 (JCL) |
| NEW S&G, INC., a Texas Corporation; MOHAMMED HAIDER, individually; and KISHOR GANDHI, individually, | **MEMORANDUM AND ORDER** |
| Defendants. | |

**LIFLAND, District Judge**

Plaintiff Ramada Franchise Systems, Inc. ("Plaintiff") moves for final judgment by default pursuant to Fed. R. Civ. P. 55(b)(2), against New S&G, Inc. ("NSG"), Mohammed Haider, and Kishor Gandhi (collectively, "Defendants"). For the reasons stated herein, Plaintiff's Motion will be granted.

**BACKGROUND**

Plaintiff, a Delaware corporation with its principal place of business in Parsippany, New Jersey, is a franchisor of guest lodging facilities. (Compl. ¶¶ 1,

10.).  Defendant New S&G is a Texas corporation with its principal place of business in Palestine, Texas. (Id. ¶ 2.).  Defendant Mohammed Haider is a citizen of Texas and a principal of NSG. (Id. ¶ 3.).  Defendant Kishor Gandhi is also a citizen of Texas and principal of NSG. (Id. ¶ 4.).

Plaintiff alleged in its complaint that Defendants had defaulted on payment of Recurring Fees under the License Agreement. (Id. ¶ 34.).  After several attempts to collect the unpaid fees, Plaintiff terminated the License Agreement, advised Defendants to discontinue their use of Plaintiff's trade names, service marks, and related materials, and demanded damages as provided for in the agreement. (Id. ¶ 36.).

Plaintiff filed a verified seven-count complaint on May 26, 2004, seeking: 1) compensatory damages and injunctive relief under the Lanham Act for infringing use of its registered marks; 2) restitution and disgorgement of profits; 3) liquidated damages under Section 12.1 of the License Agreement; 4) damages for loss of future revenue by virtue of the premature termination of the agreement; 5) payment of the Recurring Fees owed under the agreement; and 6) unjust enrichment based on Defendants' continued use of Plaintiff's marks after termination of the License Agreement; and 7) personal liability of Haider and Gandhi as guarantors of NSG's obligations as to liquidated damages.  On June 9,

2004, a Summons and Complaint were served upon NSG (Affidavit of Bryan D. Plocker ¶ 4.). Also on June 9, 2004, a Summons and Complaint were served on Gandhi. (Id. ¶ 5.). After receiving from the Court an appropriate extension of time for service, Plaintiff served Haider on November 23, 2004. (Id. ¶ 6.).

The docket reflects, and Plaintiff's counsel confirms, that Defendants failed to answer or otherwise respond to the Complaint. (Id. ¶¶ 7-8.). The Clerk of Court entered default as to NSG and Gandhi on August 16, 2004 and as to Haider on March 10, 2005 for failure to appear. Plaintiff now seeks from the Court a final judgment by default.

A.  Default Judgment

Federal Rule of Civil Procedure 55(b)(2) governs the Court's entry of default judgment. The party against whom default judgment is requested must have been properly served with process. Fed. R. Civ. P. 55(b)(2); see also Local Union No. 98, Int'l Bd. of Elec. Workers v. Cableco, Inc., No. 99-755, 1999 WL 269903 at *1 (E.D. Pa. Apr. 28, 1999). Before a default judgment may be entered by the court, the moving party must have obtained an entry of default pursuant to Federal Rule of Civil Procedure 55(a); see Reed Publ'g (Nederland) B.V. v. Execulink, Inc., No. 98-1049, 1998 WL 812246 at *1 (D.N.J. Nov. 17, 1998) (citing 10A Wright, et al., Federal Practice and Procedure, § 2682 (3d ed. 1998)).

Plaintiff in this case has satisfied the requirements of service of process and entry of default.

A party seeking default judgment is not entitled to such relief as a matter of right, even where the defendant's default has been noted pursuant to Federal Rule 55(a). See E.I. Du Pont de Nemours & Co. v. The New Press, Inc., No. 97-6267, 1998 WL 159050 at *2 (E.D. Pa. Mar. 16, 1998). Rather, a court is "required to exercise sound judicial discretion in deciding whether to . . . enter default judgment." Id. Default judgment is generally disfavored because it prevents resolution of a plaintiff's claims on the merits. Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984). Thus, when considering a motion for default judgment, a court may consider the following factors: the potential amount of damages; whether issues of material fact or substantial public concern are implicated; whether the default is primarily technical; whether the moving party has been substantially prejudiced by the delay involved; whether the grounds for default are clearly established or in doubt; whether the default was attributable to good faith, mistake, or excusable neglect; and whether the court may later be obliged to set aside the default. E.I. Du Pont de Nemours & Co., 1998 WL 159050 at *2.

B. Damages

When a defendant is in default, the court treats all pleadings and allegations of the plaintiff as true, except those relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990). Therefore, the Court must independently consider Plaintiff's claimed damages.

## ANALYSIS

A. Plaintiff's Entitlement to Default Judgment

The record indicates that Plaintiff effectuated service of process on Defendants. Default was entered by the Clerk. Furthermore, although notice of the instant motion is not required in order to enter a default judgment under Fed. R. Civ. P. 55(b)(2), the record indicates that Defendants were served with notice of the instant motion for default judgment and supporting documents on or about March 21, 2005, via UPS overnight service. Thus, the Court is satisfied that Defendants had ample notice of the complaint and of the instant motion for default judgment and chose not to respond.

The public concern for enforcing contracts such as here weigh in favor of entering default judgment in this matter. A failure to enter a default judgment would prejudice Plaintiff in its ability to enforce its contractual rights. Plaintiff has established grounds for default. There is no evidence that Defendants' failure

to answer the summons and complaint in this matter or to respond to the motion for default judgment may be attributed to a good-faith explanation, mistake, or excusable neglect. After viewing Plaintiff's complaint and the affidavits of Bryan D. Plocker and Kathy Cox in support of the motion for default judgment, the Court is satisfied that Plaintiff has sufficiently established the factors necessary to warrant entry of a default judgment.

B. <u>Damages</u>

Included with the motion for default judgment is the affidavit of Kathy Cox, Plaintiff's Senior Director of Franchise Administration. Ms. Cox explains how Plaintiff arrived at its claimed damages:

<u>Recurring Fees and Note Claim</u>

An attached itemized statement of fees due indicates that Plaintiff is owed fees in the amount of $115, 594.02. (Cox Aff., Exh. I.). Calculated at the 1.5% monthly legal rate, interest has accrued to Plaintiff's benefit in the amount of $36,103.45. The period of accrued interest extends from the August 1, 2003 date of termination of the License Agreement through the April 25, 2005 return date of this motion. These figures total $151,697.47.

<u>Liquidated Damages</u>

The liquidated damages clause in the License Agreement is designed to

compensate Plaintiff for lost Recurring Fees due to premature termination. Section 12.1 of the Agreement details a formula for damages based on the number of guest rooms at the terminated facility, coupled with Plaintiff's average revenues, and multiplied by the period of years typically required to replace a terminated property. Plaintiff seeks $188,000.00 in liquidated damages ($2,000 multiplied by 94 rooms), plus 1.5% interest (calculated from 30 days following the date of termination until the April 25, 2005 return date of this motion) in the amount of $55,897.75, totaling $243,897.75. These figures appear reasonable to the Court based on the relevant provisions of the License Agreement.

<u>Lanham Act</u>

Plaintiff also seeks damages under the Lanham Act for Defendant's unauthorized use of the Ramada marks. Plaintiff's calculation of damages is based on the average monthly gross revenue of the facility multiplied by ten for the ten-month period of infringement, which equals $330,197.70. This yields Recurring Fees of $28,066.80, trebled to $84,200.40.

The Lanham Act entitles the owner of a famous mark to seek injunctive relief against a party infringing on its trademark. 15 U.S.C. § 1125 (c)(2).[1]

---

[1] Although Plaintiff sought injunctive relief under the Lanham Act in its complaint, the requested relief in its motion for default judgment is limited to damages, attorneys' fees, and costs.

However, if it is shown that the person against whom the injunction is sought has willfully traded on the owner's reputation or diluted a famous mark, then the Act provides for further remedies under 15 U.S.C. § 1117. Under § 1117 (a), "subject to the principles of equity," the court shall award plaintiff (1) defendant's profits, (2) damages, and (3) costs. "In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." Id.

The statute emphasizes the court's equitable discretion in determining recovery under the Lanham Act: "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." Id.

Here, the Court finds that Defendants continued to use Plaintiff's mark for ten months after termination of the franchise agreement, a course of conduct constituting willful unauthorized use. Therefore, Plaintiff would ordinarily be entitled to damages under §1117(a). However, there is no proof in the record of Defendants' profits or damages flowing from the unauthorized use of Plaintiff's mark. Plaintiff's suggestion that actual damages equates to Recurring Fees is rejected, because Recurring Fees is a contractual matter, not what the Lanham Act

8

contemplated when it provided for "actual damages" or "damages" in § 1117(a). For this reason, the Court in its equitable discretion declines Plaintiff's request to award Lanham Act damages.

Accordingly, **IT IS** on this 31st day of May 2005

**ORDERED** that default judgment is entered in favor of Plaintiff Ramada Franchise Systems, Inc. and against Defendants New S&G, Inc., Mohammed Haider, and Kishor Gandhi jointly and severally in the total amount of $404,211.10, comprised of the following:

(a)  $151,697.47 for Recurring Fees (principal plus prejudgment interest);

(b)  $243,897.75 for liquidated damages (principal plus prejudgment interest);

(c)  $8,615.88 for attorneys' fees and costs; and it is further

**ORDERED** that the Second and Fourth Counts of the Verified Complaint are dismissed with prejudice.[2]

/s/ John C. Lifland, U.S.D.J.

---

[2] This Memorandum and Order resolves Counts I, III, V, VI, and VII relating respectively to Lanham Act damages, liquidated damages, Recurring Fees, unjust enrichment for unauthorized use of Plaintiff's marks, and the individual Defendants' personal guarantees of New S & G's obligations under the License Agreement.